UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

SHAWN MICHAEL OLTHOFF,

Defendant.

Case No. 11-CR-0354 (PJS/AJB)

FINDINGS OF FACT
AND VERDICT

---

Thomas M. Hollenhorst, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Richard J. Malacko, MALACKO LAW OFFICE, for defendant.

On October 28, 2011, Deputy United States Marshal Jeffrey Hattervig, Deputy United States Marshal Thomas Knutson, and other deputies attempted to serve an arrest warrant on defendant Shawn Michael Olthoff. A confrontation ensued, and Olthoff escaped by car, only to be captured the next day following an extensive manhunt.

Olthoff could have been charged with an array of crimes arising out of his confrontation with Deputies Hattervig and Knutson, but the government charged him with only one: the crime of using a deadly weapon to forcibly resist an employee of the United States government in violation of 18 U.S.C. § 111(b). Count 1 of the indictment charges Olthoff with using a deadly weapon to resist Deputy Hattervig, while Count 2 of the indictment charges Olthoff with using a deadly weapon to resist Deputy Knutson. *See* Indictment [Docket No. 1]. The "deadly weapon" allegedly used by Olthoff was the car in which he escaped.

The decision of the government to charge Olthoff only with using a deadly weapon to resist Deputies Hattervig and Knutson set a rather high bar for the government, as the Eighth


SCANNED
MAR 19 2012
U.S. DISTRICT COURT MPLS

Circuit has interpreted § 111(b) very narrowly. Under Eighth Circuit precedent — precedent that differs from the precedents of other circuits — it is not enough that the government prove that Olthoff acted with reckless disregard for the safety of the deputies or even that Olthoff subjectively intended to harm the deputies. Instead, the government must prove that Olthoff used his car in a way that was "likely" to endanger the lives of the deputies or inflict serious bodily harm on them.

Olthoff waived his right to a jury trial with the government's consent and this Court's approval.[1] The Court held a bench trial on January 24, 2012. Based on the evidence introduced at that trial, the Court cannot find, beyond a reasonable doubt, that Olthoff's actions on October 28, 2011 were "likely" to endanger the life of, or inflict serious bodily harm on, either Deputy Hattervig or Deputy Knutson. The Court therefore acquits Olthoff of the charges that he used a deadly weapon against Deputies Hattervig and Knutson in violation of § 111(b). The Court does, however, convict Olthoff of the lesser-included charges of forcibly resisting Deputies Hattervig and Knutson in violation of 18 U.S.C. § 111(a).

The Court takes no pleasure in acquitting Olthoff of the more serious charges. Olthoff acted with reckless disregard for the safety of Deputies Hattervig and Knutson, who were acting with the courage and dedication that is characteristic of the Deputy United States Marshals who serve this Court. Unfortunately, though, the government's charging decision and the Eighth Circuit's unusually narrow construction of § 111(b) have tied this Court's hands.

---

[1]Waiver of Jury Trial [Docket No. 34]. The Court found on the record that Olthoff's decision to waive his right to a jury trial was free, voluntary, knowing, and informed.

# I. BACKGROUND

Under § 111(a), it is a crime to forcibly resist a deputy United States Marshal or any other employee of the federal government while that employee is performing his official duties. The maximum sentence that can be imposed for violating § 111(a) under the circumstances of this case is one year.[2] Under § 111(b), however, a defendant can be sentenced to up to 20 years in prison if he "use[d] a deadly or dangerous weapon" in the course of violating § 111(a).[3] Although § 111(b) is labeled "Enhanced Penalty," courts have found — and the parties agree — that it describes a separate crime. *See, e.g., United States v. Yates*, 304 F.3d 818, 821-22 (8th Cir. 2002); *United States v. Vela*, 624 F.3d 1148, 1159 (9th Cir. 2010) ("§ 111 must be construed to create three distinct criminal offenses, with § 111(a) containing one misdemeanor and one felony and § 111(b) containing a second felony." (internal citations omitted)). For a defendant to be convicted of violating § 111(b), then, the government must prove beyond a reasonable doubt not only that the defendant forcibly resisted a federal employee in violation of § 111(a), but also

---

[2]As relevant to this matter, 18 U.S.C. § 111(a)(1) provides that "[w]hoever . . . forcibly assaults, resists, opposes, impedes, intimidates, or interferes with [an officer or employee of the United States] while engaged in or on account of the performance of official duties . . . shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both."

In this case, the indictment did not charge Olthoff with having "physical contact with the victim of th[e] assault" or acting with "the intent to commit another felony," and thus if Olthoff is not convicted of violating § 111(b), he can be convicted only of the lesser-included offense of forcibly resisting an employee of the federal government — a misdemeanor punishable by no more than one year in prison.

[3]As relevant to this matter, 18 U.S.C. § 111(b) provides that "[w]hoever, in the commission of any acts described in [§ 111(a)], uses a deadly or dangerous weapon . . . or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both."

that the defendant used a deadly weapon in the course of that resistance. *See Yates*, 304 F.3d at

823 ("*Apprendi* requires a jury finding beyond a reasonable doubt of use of a weapon or bodily

injury as a predicate for imposing a sentence over [the maximum sentence allowed under

§ 111(a)].").

At the beginning of the trial, the parties stipulated to two things:

*First*, the parties agreed that Deputies Hattervig and Knutson were federal officers and

were performing their official duties during the confrontation with Olthoff on October 28, 2011.

*See* Trial Stipulation at ¶ 1 Gov't Tr. Ex. 20.

*Second*, the parties agreed that Olthoff "knowingly and forcibly resisted, opposed,

impeded and interfered with Deputy Hattervig and Deputy Knutson while they were engaged in

and on account of the performance of their official duties." *Id.* at ¶ 2.

These stipulated facts establish beyond a reasonable doubt that Olthoff is guilty of

violating § 111(a) with respect to Deputy Hattervig and with respect to Deputy Knutson[4] —

lesser-included offenses that are necessarily charged in Counts 1 and 2 of the indictment.[5] *See*

---

[4]Even if the parties had not entered into these stipulations, the Court would convict
Olthoff of violating § 111(a) with respect to both Deputy Hattervig and Deputy Knutson, as the
evidence at trial established beyond a reasonable doubt that Olthoff knowingly, intentionally, and
forcibly resisted, opposed, impeded, and interfered with Deputies Hattervig and Knutson while
they were engaged in the performance of their official duties.

[5]Before closing arguments, Olthoff specifically requested that the Court consider the
lesser-included offense of § 111(a). *See United States v. Scout*, 112 F.3d 955, 957 n.1 (8th Cir.
1997) (noting that defendant, while charged with assault with a dangerous weapon, was
convicted of the lesser-included charge of assault without a dangerous weapon); *United States v.
Hopkins*, 310 F.3d 145, 151 (4th Cir. 2002) (holding that § 111(a) is a lesser-included offense of
§ 111(b) because "each and every element of § 111(a), forcibly assaulting, resisting, opposing,
impeding, intimidating, or interfering with an officer, is incorporated within § 111(b), forcibly
assaulting, resisting, opposing, impeding, intimidating, or interfering with an officer using a
(continued...)

-4-

Fed. R. Crim. P. 31(c) ("A defendant may be found guilty of . . . an offense necessarily included in the offense charged."). The only question is whether Olthoff also violated § 111(b) — that is, whether Olthoff used his vehicle as a deadly or dangerous weapon in the course of forcibly resisting Deputies Hattervig and Knutson.

## II. FINDINGS OF FACT

Olthoff violated the terms of his supervised release and, on October 20, 2011, a warrant was issued for his arrest. On October 28, 2011, the United States Marshal received information that Olthoff and his girlfriend, Stevie-Marie Ann Bergren, were staying in a motel in North Branch, Minnesota. Deputy marshals set up surveillance of the motel and of a black, two-door, Chevrolet Monte Carlo, which they believed belonged to Olthoff's mother. At approximately 9:00 a.m., Olthoff and Bergren left the motel and got into the Monte Carlo. Bergren was the driver, while Olthoff was sitting in the front passenger seat. They proceeded west on Elm Street and then turned south on Oakview Avenue toward Highway 95.

Shortly after Bergren turned onto Oakview Avenue, three deputies — each in a separate vehicle — intercepted the Monte Carlo. Deputy Knutson, who had been parked on Elm Street, positioned his Ford Explorer approximately five feet from the rear of the Monte Carlo. Deputy Hattervig, who was driving northbound on Oakview Avenue, cut over to the southbound lane and stopped his Nissan Armada approximately five feet in front of the Monte Carlo at a slight angle. Deputy United States Marshal Farris Wooten parked his vehicle a few feet behind Deputy Hattervig's Armada.

---

⁵(...continued)
deadly or dangerous weapon").

All three deputies stepped out of their vehicles with their weapons drawn. Deputy Hattervig ordered Bergren to turn off the ignition, and ordered both Bergren and Olthoff to show their hands. Olthoff and Bergren refused to comply. Visibly agitated, Olthoff began making obscene gestures and shouting expletives. A few minutes later, Bergren turned off the ignition and got out of the Monte Carlo. As she walked away from the Monte Carlo, Deputy Wooten intercepted her, placed her in handcuffs, and took her to his vehicle.

Olthoff moved over into the driver's seat and started the ignition of the Monte Carlo. Deputies Hattervig and Knutson immediately got back into their respective vehicles and pulled forward to close the distance between their vehicles and the Monte Carlo. Deputy Hattervig moved his Armada so that it was "bumper-to-bumper" with the front end of the Monte Carlo, while Deputy Knutson moved his Explorer to within a foot of the Monte Carlo's rear bumper. In other words, before Olthoff attempted to move the Monte Carlo, the deputies had eliminated the space between the Monte Carlo's front bumper and Deputy Hattervig's front bumper, and the deputies had eliminated all but a few inches of the space between the Monte Carlo's back bumper and Deputy Knutson's front bumper.

Olthoff shifted the Monte Carlo into reverse, floored the accelerator, and collided with Deputy Knutson's Explorer. Olthoff then turned his steering wheel as far as it would go to the right (toward the curb), shifted the Monte Carlo into drive, and floored the accelerator in an attempt to mount the curb and get onto the sidewalk. As Olthoff accelerated forward, however, he hit Deputy Hattervig's Armada. Meanwhile, Deputy Knutson pulled forward even further, pinning Olthoff's Monte Carlo between Deputy Knutson's Explorer and Deputy Hattervig's

Armada. A "pushing match" ensued, with Olthoff trying to drive onto the sidewalk and the

deputies' vehicles acting like two jaws of a vise squeezing the Monte Carlo between them.

After a few moments, Olthoff managed to squeeze out from between the two deputies'

vehicles. As the Monte Carlo pulled onto the sidewalk, the driver's side of the Monte Carlo

scraped along the front of the Armada until the Armada's two front tow hooks caught the rear

quarter panel of the vehicle, momentarily halting its forward progress (even though the Monte

Carlo's wheels continued to spin). At this point, the Monte Carlo was pointed west toward the

sidewalk — essentially perpendicular to Deputy Hattervig's Armada, which was still pointing

north along Oakview Avenue.

Believing that the Monte Carlo was pinned between the Armada and the Explorer and

therefore unable to move, Deputy Hattervig opened his door and stepped out of his vehicle to

detain Olthoff. But as Deputy Hattervig exited his vehicle, the Monte Carlo tore free from the

tow hooks and sped onto the sidewalk, passing within "three or four feet" of Deputy Hattervig

and knocking down shrubs and signs as it went.

Olthoff then led the deputies on a high-speed chase for five or six miles before pulling

over, abandoning the Monte Carlo, and running into a corn field, where he evaded the deputies.

Following a manhunt involving several law-enforcement agencies, Olthoff was captured the

following day.[6]

---

[6]The government's theory of the case is that the offense was completed when Olthoff successfully broke free from the deputies' blockade. The government briefly introduced evidence about the chase to demonstrate Olthoff's subjective state of mind during his escape from the blockade. But, as both parties conceded, Olthoff's subjective intent is irrelevant to whether he used his vehicle in a manner likely to inflict serious bodily harm. *See generally United States v. Arrington*, 309 F.3d 40, 44-46 (D.C. Cir. 2002) (rejecting defendant's argument
(continued...)

## III. DISCUSSION

### A. Legal Principles

Whether an object is a deadly or dangerous weapon for purposes of § 111(b) is a question

of fact. *See United States v. Czeck*, 671 F.2d 1195, 1197 (8th Cir. 1982). The Eighth Circuit has

defined a "deadly or dangerous weapon" for purposes of § 111(b) as any object that is "used in a

manner likely to endanger life or inflict serious bodily harm." *United States v. Moore*, 846 F.2d

1163, 1166 (8th Cir. 1988) (quoting *United States v. Hollow*, 747 F.2d 481, 482 (8th Cir. 1984));

*see also Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit*

§ 6.18.111 (2011) ("The term 'deadly or dangerous weapon' is an object used in a manner likely

to endanger life or inflict serious bodily harm."). Although "serious bodily harm" need not be

life-threatening, it must be "something more than minor injury." *Moore*, 846 F.2d at 1166. In

this case, then, the question for the Court is not whether Olthoff's Monte Carlo was inherently

dangerous (as a gun or a knife would be), but rather how Olthoff used the Monte Carlo. If

Olthoff used the Monte Carlo "in a manner *likely* to inflict serious bodily harm," then he used a

"deadly or dangerous weapon" for purposes of § 111(b). *Id.* at 1167 (emphasis added).

It is well settled that a motor vehicle "may be used as a deadly or dangerous weapon."

*United States v. Yates*, 304 F.3d 818, 823 (8th Cir. 2002). Courts have upheld a number of

convictions under § 111(b) when the defendant used a motor vehicle as a deadly weapon. *See,*

*e.g., United States v. Anchrum*, 590 F.3d 795, 802-03 (9th Cir. 2009) (attempting to run over an

officer, striking his knee, and then slamming into another officer's vehicle with enough speed to

---

[6](...continued)
that he needed to have intended to use his car as a deadly weapon).

cause a "spinout"); *United States v. Williams*, 627 F.3d 839, 841-42 (11th Cir. 2010) (ramming a deputy's vehicle and nearly forcing it off a highway ramp that was 75 feet above the ground); *United States v. Arrington*, 309 F.3d 40, 49 (D.C. Cir. 2002) (dragging an officer through an intersection). Under Eighth Circuit precedent, however, this Court cannot convict Olthoff of violating § 111(b) unless the Court finds that the government has proved, beyond a reasonable doubt, that Olthoff used the Monte Carlo in a way that was "likely" to endanger the lives of, or inflict serious bodily harm on, Deputies Hattervig and Knutson.

*B. Analysis*

The Court is unable to find beyond a reasonable doubt that Olthoff used his Monte Carlo "in a manner likely to endanger life or inflict serious bodily harm." *Moore*, 846 F.2d at 1166. To the contrary, the fact that neither Deputy Hattervig nor Deputy Knutson suffered serious bodily harm during the confrontation with Olthoff is not at all surprising.

Before Olthoff shifted the Monte Carlo into reverse, Deputy Hattervig's Armada was "bumper-to-bumper" with the front of the Monte Carlo, and Deputy Knutson's Explorer was within a few inches of the back of the Monte Carlo.[7] Even though Olthoff floored his accelerator before crashing into the Explorer, there simply was not enough distance between the two vehicles for the Monte Carlo to muster sufficient speed to cause serious bodily harm to Deputy Knutson, who was sitting in a large and sturdy SUV. And, in fact, Deputy Knutson's testimony confirms this inference. Deputy Knutson testified that, when Olthoff's Monte Carlo collided with his Explorer, he felt a jolt, but did not "fly[] forward or backwards" despite not wearing a seat belt.

---

[7]Deputy Knutson initially testified that his Explorer was two to three feet behind the Monte Carlo, but then, on cross-examination, adopted his prior testimony before the grand jury that the Explorer was "inches, maybe a foot" behind the Monte Carlo.

Much the same can be said about Olthoff's collision with Deputy Hattervig's Armada. After Olthoff collided with Deputy Knutson's Explorer, Olthoff shifted the Monte Carlo into drive, turned the wheel as far to the right as possible, pressed the accelerator to the floor, and collided with Deputy Hattervig's Armada. But when Olthoff hit the accelerator, there could not have been more than a foot or so separating his Monte Carlo from Deputy Hattervig's Armada. Once again, there simply was not enough distance between the two vehicles for the Monte Carlo to muster sufficient speed to cause serious bodily harm to Deputy Hattervig, who, like Deputy Knutson, was sitting in a large and sturdy SUV.

At some point, the Monte Carlo managed to slip free onto the sidewalk. But before Olthoff could speed away, the Armada's two front tow hooks caught the driver's side rear quarter panel of the vehicle, temporarily preventing the Monte Carlo from moving. Deputy Hattervig then briefly stepped out of his vehicle in an attempt to detain Olthoff. Deputy Hattervig testified that he had not taken more than a step before the Monte Carlo began moving again. As Deputy Knutson's testimony confirmed, when Deputy Hattervig exited his vehicle, Olthoff's Monte Carlo was nearly perpendicular to Deputy Hattervig's Armada. In other words, Olthoff's Monte Carlo was pointed *away* from Deputy Hattervig. Moreover, given where the Armada's tow hooks caught the Monte Carlo — that is, on the rear quarter panel, which is behind the driver's door — Deputy Hattervig must have been located behind the front wheels of Olthoff's vehicle. In short, then, although Deputy Hattervig was within "three or four feet" of the Monte Carlo in terms of distance, he was never in the path of the vehicle. Therefore, when Olthoff continued to floor the accelerator to tear loose from the Armada's front tow hooks, he was not using his Monte Carlo in a way that was likely to cause serious bodily harm to Deputy Hattervig.

Without question, Olthoff acted with reckless disregard for the safety of Deputies Hattervig and Knutson. And without question, either or both deputies could have suffered serious bodily harm. But the Eighth Circuit requires more than the *possibility* of serious bodily harm to convict Olthoff of violating § 111(b); the Eighth Circuit requires this Court to find beyond a reasonable doubt that Olthoff used his Monte Carlo in a way that was "*likely* to endanger life or inflict serious bodily harm." *Moore*, 846 F.2d at 1166 (emphasis added).

Other circuits require less — and, if this case were being tried in those circuits, the Court would not hesitate to convict Olthoff of violating § 111(b). For example, the Ninth Circuit defines "a deadly or dangerous weapon" to include any object used in a way that "*may* endanger the life of or inflict great bodily harm on a person." *United States v. Anchrum*, 590 F.3d at 802 (quoting *United States v. Sanchez*, 914 F.2d 1355, 1359 (9th Cir. 1990)) (emphasis added). Similarly, in the Fifth Circuit, "[t]he term 'deadly or dangerous weapon' includes any object *capable* of inflicting death or serious bodily injury." *Pattern Jury Instruction: Fifth Circuit, Criminal Cases* § 2.09 (2001) (emphasis added).

But this Court is, of course, bound to follow the decisions of the Eighth Circuit. Given that the most space that ever existed between Olthoff's Monte Carlo and either deputy's SUV was less than a foot — that is, about the length of an ordinary sheet of paper — the Court cannot find beyond a reasonable doubt that Olthoff used his car in a way that was likely to inflict serious bodily harm on either Deputy Hattervig or Deputy Knutson when he drove into their SUVs. And given that the Monte Carlo was pointed away from Deputy Hattervig — and Deputy Hattervig was standing behind the Monte Carlo's front wheels — during the brief moment that the deputy stepped out of his Armada, the Court cannot find beyond a reasonable doubt that Olthoff used his

car in a way that was likely to inflict serious bodily harm on Deputy Hattervig when Olthoff

drove onto the sidewalk and escaped.

## C. Conclusion

As the Court has already noted, it takes no pleasure in acquitting Olthoff of violating

§ 111(b), and no pleasure in the fact that Olthoff can be sentenced to no more than one year in

prison for each of his two violations of § 111(a). Unfortunately, though, the Court's hands are

tied by the charging decision of the government and by the Eighth Circuit's restrictive

interpretation of § 111(b).

The government charged Olthoff only with forcibly resisting a federal officer with a

deadly or dangerous weapon. As a result, because this Court has found that Olthoff did not use

his vehicle as a deadly or dangerous weapon in violation of § 111(b), the Court's only recourse is

to find Olthoff guilty of forcibly resisting a federal officer in violation of § 111(a) — a

misdemeanor that carries a one-year maximum prison sentence. It appears to the Court that

Olthoff could have been charged with assaulting a federal officer with "the intent to commit

another felony" in violation of § 111(a) — a felony that carries an eight-year maximum prison

sentence. Had Olthoff been charged with that crime, he might now be looking at two eight-year

sentences, instead of two one-year sentences. But the government decided (as was its

prerogative) to pursue an "all-or-(almost)-nothing" strategy in prosecuting Olthoff. The

government may have had good reasons for its charging decision, but the unhappy result of that

decision and the Eighth Circuit's restrictive precedents is that Olthoff now faces, at most, two

consecutive one-year terms of imprisonment for recklessly endangering two deputy marshals

who were acting in the service of this Court.

VERDICT

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court HEREBY FINDS:

1.      that defendant Shawn Michael Olthoff is NOT GUILTY of the crime of assaulting, resisting, opposing, impeding, intimidating, or interfering with Deputy United States Marshal Jeffrey Hattervig with a dangerous or deadly weapon in violation of 18 U.S.C. § 111(b), as charged in Count One of the indictment;

2.      that defendant Shawn Michael Olthoff is NOT GUILTY of the crime of assaulting, resisting, opposing, impeding, intimidating, or interfering with Deputy United States Marshal Thomas Knutson with a dangerous or deadly weapon in violation of 18 U.S.C. § 111(b), as charged in Count Two of the indictment;

3.      that defendant Shawn Michael Olthoff is GUILTY of the crime of resisting, opposing, impeding, or interfering with Deputy United States Marshal Jeffery Hattervig in violation of 18 U.S.C. § 111(a), as necessarily charged in Count One of the indictment; and

4.      that defendant Shawn Michael Olthoff is GUILTY of the crime of resisting, opposing, impeding, or interfering with Deputy United States Marshal Thomas Knutson in violation of 18 U.S.C. § 111(a), as necessarily charged in Count Two of the indictment.

Dated: March 19, 2012                s/Patrick J. Schiltz
                                         Patrick J. Schiltz
                                         United States District Judge